**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **LEON J. WINSBERRY, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-13528** |
| **TERREBONNE PARISH CRIMINAL JUSTICE COMPLEX, ET AL** | **SECTION "I" (4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and(C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.

On October 31, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by telephone conference call.[2]

Defendants Kelly Gaudet and Emergency Medical Technician Pat Naquin have also filed a **Motion to Dismiss for Insufficiency of Service of Process (R. Doc. 19).**

I.     **Factual Summary**

On August 1, 2016, the petitioner, Winsberry, filed this *pro se* and *in forma pauperis* complaint against the Terrebonne Parish Criminal Justice Complex ("TPCJC"), Corporal Thomas, Lieutenant Authement, Sergeant Theriot and Kelly Gaudet and Emergency Medical Technician Pat Naquin. Winsberry is currently housed at Lafourche Parish Jail in Thibodaux, Louisiana.

In the complaint, Winsberry alleges that on July 8, 2016 he slipped on some grits and eggs while on his way to the phone. R. Doc. 4-1, p. 5.  He alleges that after he fell the guards and

---

[1]766 F.2d 179 (5th Cir. 1985).

[2]R. Doc. No. 21.  The plaintiff was sworn prior to testifying.

medical team came and rushed him to the hospital for emergency treatment where he was x-rayed, given shots and released with orders to take pain pills. *Id.* He alleges that the next day while trying to climb down from his bunk, that his back gave out and he fell to the floor and he re-injured his back. *Id.* He states that he cried for help, but that no one would come. *Id.*

The next morning, Winsberry states that the deputy of the dorm informed him that he would notify the medical staff of what happened and ask them why he had not received his prescribed medicine. *Id.* at p. 6. However, he states that no one ever responded to that request. Therefore, during his break from this cell, Winsberry states that he informed the officer in the pod control room to call the medical staff. When he was told to return to lockdown, Winsberry refused, requesting medical attention. He states that roughly forty minutes later Sergeant Theriot told him he had two minutes to return to lock down. Winsberry states that he responded that he could not walk. Afterwards, Sgt. Theriot returned with Cpl. Michael Thomas, Lt. Authement, Deputy Steven Foret—who is not named as a defendant—LPN Kelly Gaudet, and EMT Pat Naquin.

He alleges that the EMT checked his blood pressure. When he did so he advised the EMT that it was not his blood pressure but his back. He alleges that after checking his blood pressure, the EMT advised the deputies that he was done with him and that they could do what had to be done with him. He also alleges that at that time the deputies wrestled him down on his stomach, peppered sprayed him twice, kneed his back, and struck him numerous times during the course of action. He alleges that he was hurt very badly. Thereafter, he was allegedly hogtied and then carried to the front by medical in that condition. Five minutes later Nurse Kelly Gaudet gave him medications. He complains that the actions of the deputies was excessive resulting in numbness in his legs when he gets out of the bed or stand for long periods of time.

2

## II.   The *Spears* Hearing

On October 31, 2016, a *Spears* Hearing was conducted. Winsberry was sworn in and testified to the following:

Winsberry states that he was placed in lockdown following an altercation between him and other inmates after another inmate reportedly stole Winsberry's commissary item. Following that altercation, Winsberry was placed in lockdown for twenty-one (21) days. Approximately two days before leaving lockdown, Winsberry reports that he slipped and fell on grits that were located on the ground. After falling, he was rushed to the hospital where the doctors found a contusion on his back. After being treated, Winsberry states that he was prescribed pain pills and muscle relaxers, which were to be administered immediately. However, he did not receive the medication. He acknowledges that he advised a deputy that he needed medical attention when the deputy came for a sick call and the deputy stated he would inform the medical staff.

Because he did not receive his medication, Winsberry states that he refused to return to his cell for lockdown because the cell was out of the camera view and he believed he would not receive treatment. When he refused, Winsberry states that the Nurse came but did nothing. Thereafter, Winsberry says the three officers began beating, wrestling, and pepper-spraying him before hogtying him. He states that while the officers were attempting to restrain him he was holding on to the table. He states that he did not fight back, but only hollered and kept asking for his medication. He states that he stands by his decision to refuse to return to the cell because it was the only way that he could get his medication. He has named Cpl. Thomas, Lt. Authement, and Sgt. Theriot in this suit for these actions. Winsberry conceded that he was written up for refusing to comply with the instruction to return to his cell for lockdown in connection with this incident.

As a result of his disciplinary conviction, he received an additional 30 days. He states that he did not appeal that disciplinary finding.

He states that he has named Nurse Gaudet because she was the nurse on duty at the time. He states that when she was called down she checked his blood pressure and told him that nothing was wrong. He says that he then informed her that his blood pressure was not the problem and that he needed pain medication. He says that she then said nothing was wrong with him and told the officers to do what they had to do. He states that he named Pat Naquin because she was also there and for the initial refusal of medication. However, Winsberry concedes that he ultimately received his medication after he was brought to the Nurse's Station after being hogtied.

## III.    **Standard of Review**

Title 28 U.S.C. § 1915A and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an undisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28.

Therefore, the Court must determine whether the plaintiffs' claims are based on an undisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

## IV.    <u>Improper Defendant: The Terrebonne Parish Criminal Justice Complex</u>

Winsberry named the Terrebonne Parish Criminal Justice Complex, the facility where he was incarcerated, as a defendant.  However, a claim filed pursuant to § 1983 provides for the imposition of liability against a person.  Therefore, the issue is whether the prison is a person within the meaning of Title 42 U.S.C. § 1983.

Section 1983 imposes liability on any "person" who violates someone's constitutional rights "under color of law."  Title 42 U.S.C. § 1983; *see Will v. Michigan Department of State Police*, 491 U.S. 58 (1989).  Under federal law, a parish prison facility is not a "person" within the meaning of the statute.  *Cullen v. DuPage County*, 1999 WL 1212570 at *1 (N.D. Ill. Dec. 14, 1999); *Whitley v. Westchester County Correctional Facility Admin.*, 1997 WL 659100 at *6 (S.D.N.Y. Oct. 22, 1997); *Powell v. Cook County Jail*, 814 F.Supp. 757, 758 (N.D. Ill. 1993); *Hancock v. Washtenaw County Prosecutor's Office*, 548 F.Supp. 1255, 1256 (E.D. Mich 1982).

In addition, a parish prison is not a proper defendant because it lacks capacity to be sued.  Rule 17(b) of the Federal Rules of Civil Procedure provides that Louisiana law controls the determination of whether the Terrebonne Parish Criminal Justice Complex has the capacity to sue or be sued.[3] To possess such a capacity, an entity must qualify as a "juridical person."  This term

---

[3]Rule 17(b) of the Federal Rules of Civil Procedure provides that "capacity to sue or be sued shall be determined by the law of the state in which the district court is held."  Fed. R. Civ. P. 17(b).

is defined by the Louisiana Civil Code as ". . . an entity to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code Art. 24 (West 1999).

Although Louisiana courts have not ruled on the issue of whether a parish jail is a juridical person that can sue or be sued, the Louisiana Supreme Court in *Roberts v. Sewerage and Water Board of New Orleans*, 634 So.2d 341 (La. 1994), set forth a framework within which to determine an entity's juridical status.  The Court in *Roberts* stated:

> [t]he important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label.  Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue.  In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.  1 Sands & Libonati, § 2.18 and authorities cited therein, §§ 2.19, 2.20.   Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.

*Roberts*, 634 So.2d at 346-47.  In concluding that the Sewerage and Water Board was capable of being sued, the *Roberts* court focused its analysis on the independent management, financing, and operations of the Board.  *See Id.* at 352.

By contrast, in *City Council of Lafayette v. Bowen*, 649 So.2d 611, 616 (La. App. 3rd Cir. 1994), *writ denied*, 650 So.2d 244 (La. 1995), the Louisiana Third Circuit Court of Appeal held that under the *Roberts* analysis, the City Council of Lafayette had no capacity to sue or be sued. In so holding, the court expressly found "no authority, constitutional, statutory, or via home rule charter, that authorizes the Lafayette City Council to institute on its own motion, a lawsuit." *Bowen*, 649 So.2d at 613.

Furthermore, Louisiana law divides the responsibility for its parish jails.  The parish is charged with its jails' physical maintenance.  La. Rev. Stat. Ann. § 15:702.  However, the duty to

administer and operate the jails falls on the Sheriff of each parish.  La. Rev. Stat. Ann. § 15:704. The office of sheriff is a constitutionally created office in Louisiana, existing separately from the Parish government.  La. Const. Art. 5 § 27; *see Langley v. City of Monroe*, 582 So.2d 367, 368 (La. App. 2nd Cir. 1991) (holding that the parish could not be liable for injuries attributed to the sheriff).

Under the *Roberts* framework, the TPCJC is not "legally empowered to do" anything independently of either the Terrebonne Parish officials or the Terrebonne Parish Sheriff.  *See Roberts*, 634 So.2d at 347.  The prison is thus not a separate entity, but merely a shared branch or facility of these two greater entities.

A parish jail is "not an entity, but a building."  *See Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 613 (E.D. La. 1998) (dismissing the St. Tammany Parish Jail with prejudice); *accord Dale v. Bridges*, 1997 WL 810033 at *1 n.1 (N.D. Tx. Dec. 22, 1997) (indicating that the Dallas County Jail is not a juridical entity capable of being sued).  Accordingly, Winsberry's claim against the TPCJC should be dismissed as frivolous.

## V.     Failure to Provide Medication

Winsberry has named Gaudet and Naquin in his complaint for the failure to provide him his prescribed medicine in a timely fashion.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). In applying this standard, the courts have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174

8

F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).  In addition, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.  *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Moreover, it is settled that the mere delay in receiving medical treatment is not sufficient to state a claim under § 1983.  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990); *Simons v. Clemens*, 752 F.2d 1053, 1056 (5th Cir. 1985).  Regardless of the length of delay, the plaintiff at a minimum must show deliberate indifference to serious medical needs.  *Wilson v. Seiter*, 501 U.S. 294 (1991).

Here, Winsberry has not shown deliberate indifference of a serious medical need, and therefore his claims must fail. Winsberry's sole claim in connection with his medical claim is that he did not receive his prescribed medication, which was prescribed on July 8, 2016 when Winsberry went to the hospital. However, during the *Spears* Hearing, Winsberry conceded that he did receive his prescribed pain medication the next day, July 9, 2016. As such, Winsberry's claim is that he merely did not receive his medication as soon as he would have like. This delay is not a sufficient claim under § 1983 and does not amount to deliberate indifference. *Mendoza*, 989 F.2d 195. As such, Winsberry's claims against Gaudet and Naquin for the failure to provide him his medication in a timely fashion are frivolous and otherwise fail to state a claim for which relief can

be granted.  These claims against Gaudet and Naquin should be dismissed pursuant to § 1915, §

1915 and § 1997e.

**VI.**   **Excessive Force Claims**

Winsberry alleges that Cpl. Thomas, Lt. Authement, and Sgt. Theriot engaged in the use

of excessive force when they responded to his refusal to return to lockdown.  The preliminary

screening of Winsberry's complaint reveals that his claims are subject to dismissal with prejudice

pursuant to the provisions of *Heck v. Humphrey*, 512 U.S. 477 (1994). *See also*, *Edwards v.*

*Balisok*, 520 U.S. 641, 648 (1997).

A claim of excessive force under the Eighth Amendment requires a determination of

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  To determine the

subjective intent of the prison officials, a reviewing court is to consider the extent of injury

suffered, the need for the application of force, the relationship between that need and the amount

of force used, the threat reasonably perceived by the officials, and any efforts made to temper the

severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).  The amount

of force used must be more than *de minimis*, "provided that the use of force is not of a sort

'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley v. Albers*,

475 U.S. 312, 327 (1986)).  A plaintiff need not show significant injury, although the extent of the

injury may supply insight as to the amount of force applied. *Wilkins v. Gaddy*, 559 U.S. 34, 37-

39 & n.2 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter

that ultimately counts."); *see also*, *Brown v. Lippard*, 472 F.3d 384, 386-87 (5th Cir. 2006).

To assess the excessiveness of the force used against Winsberry in the situation described

in his complaint and the *Spears* Hearing, the Court is required to consider the need for force and

its temperance under the facts alleged.  In doing so, the Court also must consider the fact that Winsberry has admitted that he was charged with and found guilty of the disciplinary violations for refusing to comply with the officer's orders.  For these convictions, he states that he received sentences of additional time in lockdown.

For an inmate like Winsberry, the disciplinary convictions prohibit him from pursuing monetary damages and injunctive relief under § 1983.  *See Edwards*, 520 U.S. at 648; *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (*Heck* applies to claims for declaratory and injunctive relief as well as damages under § 1983).  To evaluate Winsberry's claims of excessive force, the Court would be called upon to evaluate the need for the force used as a result of Winsberry's failure to comply.   This necessarily includes reconsideration of the disciplinary board's findings concerning Winsberry conduct which prompted the use of force by the named defendants. Winsberry cannot use this § 1983 suit to recover damages "for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," even when that sentence is a disciplinary conviction.  *Edwards*, 520 U.S. at 648; *Heck*, 512 U.S. at 486-87.

Instead, before he can obtain relief under § 1983, Winsberry "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  *Heck*, 512 U.S. at 486-87; *Edwards*, 520 U.S. at 648.  Winsberry stated during his *Spears* Hearing that he has not appealed the disciplinary sentence, and he has not alleged that the related disciplinary convictions have been invalidated or reversed in the manner described in *Heck* and its progeny. A claim for relief under § 1983 for the use of excessive force would call into the question the validity of each of the convictions he received after the incident.  *See, e.g., Orange v. Ellis*, 348 F. App'x 69, 72 (5th Cir. 2009) ("Where

11

a judgment in favor of the plaintiff-even in a prison disciplinary proceeding-necessarily implies the invalidity of his conviction or sentence, a prisoner's claim for damages is not cognizable."); *Clarke*, 154 F.3d at 189-91 (*Heck* bars a plaintiff's constitutional claims that were fundamentally intertwined with his request to restore good-time credits).

For the foregoing reasons, Winsberry's excessive force claims against Cpl. Thomas, Lt. Authement, and Sgt. Theriot are barred from review pursuant to *Heck*, and must be dismissed with prejudice until such time as the *Heck* conditions are met. *See Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) ("A preferred order of dismissal would read: Plaintiffs claims are dismissed with prejudice to their being asserted again until the *Heck* conditions are met.").

## VII. <u>Bystander Claims</u>

To the extent that Winsberry is asserting claims against Gaudet and Naquin for being present during the alleged use of excessive force, his claims must also fail. As this Court has previously explained, the bystander claim alledged against a nurse is a different review because:

> [t]he bystander liability imposed upon of a corrections officer is based on the officer's law enforcement position, where he or she is sworn to uphold the law and authorized to use force when necessary. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). However, where the defendant is a medical professional, and not a correctional officer, no such special duty exists, and an inmate may not sustain a failure to intervene claim. *Rogers v. Buchanan*, No. 12-cv-2458, 2015 WL 3439145, at *11 (N.D. Tex. Mar. 27, 2015), *report adopted*, 2015 WL 3504518, at *1 (N.D. Tex. May 28, 2015); *see also*, *Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008) (affirming dismissal of an inmate's claim against a nurse for failing to intervene in a correctional officer's use of force because "she [was] not a corrections officer and thus did not have a duty to intervene…").

*Grandpre v. Correct Health*, 2016 WL 4539442, at *11 (E.D. La. Aug. 29, 2016). As such, the law does not support a claim of this nature against Gaudet or Naquin. Thus, to the extent that he has asserted a claim against Gaudet and Naquin for standing by during the alleged use of force,

Winsberry's claim is legally frivolous and otherwise fails to assert facts sufficient to state a claim of bystander liability against Gaudet and Naquin.

Finally, the Court also notes that Gaudet and Naquin have filed a Motion to Dismiss (R. Doc. 19), arguing that all of the claims against them should be dismissed because they were not properly served under Federal Rule of Civil Procedure 4(e) or Louisiana Code of Civil Procedure Arts. 1231-1235. R. Doc. 19-1, p. 2. Because the Court finds after conducting its statutorily required review that Winsberry's claims against Gaudet and Naquin are legally frivolous and otherwise fail to assert facts sufficient to state claim, the Court will recommend that the Motion to Dismiss be denied as moot.

## VIII.  <u>Recommendation</u>

**IT IS RECOMMENDED** that Leon J. Winsberry, III's claims against the defendants, Terrebonne Parish Criminal Justice Complex, Kelly Gaudet, and Pat Naquin, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

**IT IS FURTHER RECOMMENDED** that Leon J. Winsberry, III's § 1983 claims against the defendants Corporal Thomas, Lieutenant Authement, and Sergeant Theriot be **DISMISSED WITH PREJUDICE** to their being asserted again until the *Heck v. Humphrey*, 512 U.S. 477 (1994) conditions are met.[4]

**IT IS FURTHER RECOMMENDED** that Defendants Kelly Gaudet and Pat Naquin's **Motion to Dismiss for Insufficiency of Service of Process (R. Doc. 19)** be **DENIED AS MOOT**.

---

[4] *Johnson v. McElveen,* 101 F.3d 423, 424 (5th Cir. 1996).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this 17th day of November, 2016.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.